TARR (UNITED STATES v.). See Case No. 16,434.

## Case No. 13,757.

### TARR et al. v. WEBB.

[10 Blatchf. 96; 5 Fish. Pat. Cas. 593; 2 O. G. 568.] [1]

Circuit Court, E. D. New York. July 20, 1872.

PATENTS—WELL-KNOWN SUBSTANCES—MONOPOLY—WANT OF NOVELTY—PAINT FOR SHIPS' BOTTOMS.

1. The claim of the reissued letters patent, No. 4,598, division A, granted October 17, 1871, to James G. Tarr and Augustus H. Wonson, for an "improvement in paint for ships' bottoms," the original patent having been granted to them November 3, 1863, and reissued August 6, 1867, and again reissued in two divisions, October 17, 1871, namely: "A paint, consisting of oxide of copper, with a suitable vehicle or medium, substantially as described," read in the light of the specification attached, seeks to secure any mixture capable of being applied as a paint, in which oxide of copper is an ingredient, and, so understood, is invalid.

2. The poisonous effect of oxide of copper was known, and the protection of surfaces by applying compounds to them was known.

3. A monopoly of the use of a well-known substance, in a particular but well-known form, cannot be secured.

4. The subject matter of the patent, even if patentable, was not new.

5. In the reissue, under section 53 of the act of July 8, 1870 (16 Stat. 205), of a chemical patent, it is necessary to its validity, that the subject matter of it should be found described in the original patent.

[Cited in Giant-Powder Co. v. California Powder Works, Case No. 5,379.]

[This was a bill in equity by James G. Tarr and Augustus H. Wonson against H. P. Webb.]

Motion for provisional injunction, to restrain the infringement of reissued letters patent No. 4,598, division A, granted October 17, 1871, to James G. Tarr and Augustus H. Wonson, for an "improvement in paints for ships' bottoms," the original patent having been granted to them November 3, 1863 [No. 40,515], and reissued August 6, 1867, and again reissued, in two divisions, October 17, 1871 [Nos. 4,598 and 4,599]. The specification said: "The object of our invention is to prevent the fouling of the bottoms of ships by the adhesion of barnacles, seaweeds and other substances; and this we effect by means of our improved paint or composition, which is applied to the hull of the vessel, with a brush, in the ordinary manner." It then described the mode of making the paint, the ingredients, and their quantities. The ingredients were Stockholm tar, benzine or naphtha, and pulverized, dry oxide of copper. It said: "We prefer to employ the oxide of copper made from the pyritous, friable ores, because, besides being easily reduced to fine powder, these contain mineral and earthy substances, such as various other metallic oxides, sulphur, &c., which serve to divide the particles of oxide

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here reprinted by permission.]

of copper, interspersing between them substances which dissolve more slowly than they do, or which do not dissolve at all, it being desirable, for the sake of economy, that the solution should be less rapid than would take place with a pure oxide of copper, and yet sufficient to give the necessary protection to the bottom. * * * All that is desired is, that there should be a proper base, such as these earthy or mineral matters furnish, to retard the solution of oxide of copper, and give durability to the paint. Such a base, however, although desirable, in our judgment, and, as such, claimed as an element in the composition of paint which we have patented in another reissue taken at the same time with this one, is not indispensable; and, therefore, in this present specification, we do not intend to limit ourselves to its use, for a good paint may be made by the use of oxide of copper alone, with the vehicle herein described, the oxide of copper, which yields a poisonous solution in water, furnishing the necessary protection against animal and vegetable growth. * * * The proportions of tar and benzine above described are specified simply as, in our judgment, the most suitable, and they may be greatly varied according to the kind and quality of the tar employed, as they are designed merely for a vehicle or medium. In place of the naphtha or benzine, any known diluent may be employed. The result of mixing should be the production of a vehicle of about the consistency of linseed oil." The claim was this: "A paint, consisting of oxide of copper, with a suitable vehicle or medium, substantially as described."

Miles B. Andrus, for plaintiffs.
Whitney & Betts, for defendant.

BENEDICT, District Judge. The claim of the patent, read in the light of the specification attached, seeks to secure to the patentees any mixture capable of being applied as a paint, in which oxide of copper is an ingredient. The patent is not for a process, but for a compound which the patentees claim as their own discovery. In this compound, two elements, and no others, are described as essential. There must be oxide of copper in the compound, and there must be a vehicle which will permit it to be applied to surfaces, after the manner of applying paints. It is not pretended that any new property of oxide of copper is developed, or brought into action, by this manner of using it, nor does the compound itself produce any effect not before known. All the benefit derived from the use of the compound arises from the poisonous effect of oxide of copper—an effect long well known. So understood, the patent is invalid. It discloses no discovery to be rewarded. Oxide of copper, and its poisonous effects, have

long been known. Compounds capable of being applied to surfaces, in order to protect the same, are in universal use; and there was nothing new in the idea that oxide of copper could in this way be applied to surfaces.

The efforts of the patentees have been, to secure the sole right to use oxide of copper in any form which renders it capable of being applied to surfaces after the manner of applying paint. A monopoly of the use of a well known substance, in a particular but well known form, cannot be thus secured. Strychnine will poison dogs, and some one may yet discover that it can also be used to poison the worms of the sea; but that will not entitle the discoverer to an exclusive property in all mixtures which contain strychnine, and are capable of being spread on surfaces.

Furthermore, it appears, that, in 1849, prior to the plaintiffs' patent, Dr. Ure gave, in his Dictionary, a description of a metallic pigment, to be made with pure oxide of copper, which description would enable any one skilled in the art to make a compound similar, in all respects, to, and having the same qualities as, the compound described in this patent. This being so, the subject matter of this reissue, if it be patentable, cannot be secured to the plaintiffs, because it is not new.

A further objection taken to this reissue is, that the subject matter of it is not to be found in the original patent. To this one answer made is, that, under the patent act of 1870, it is not necessary, in the case of a chemical invention, that the subject matter of the reissue should be found described in the original patent; that it is sufficient if proof be made that the subject matter of the reissue was, in fact, part of the original invention; and that the grant of the reissue is decisive that proof was furnished. My opinion upon other branches of the case having been expressed, I deem it unnecessary to notice this objection to the patent in question, further than to say, that I am of the opinion that no such effect can be given to the act of 1870 as the plaintiffs claim, but that, in the case of a chemical patent reissued, it is necessary to its validity, that the subject matter be found described in the original patent. ·

The motion for an injunction is denied.

[For other cases involving this patent, see Wonson v. Gilman, Case No. 17,933; Tarr v. Folsom, Id. 13,756; Wonson v. Peterson, Id. 17,934.]